MICHAEL L. HINCKLEY, State Bar No. 161645
LAW OFFICES OF MICHAEL HINCKLEY
803 Hearst Avenue
Berkeley, California 94710
Telephone:    (510) 486-0800
Facsimile:    (510) 486-0801

Attorneys for Defendant
CHARLES HOLLINS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:11-CR-007461-1 SI |
| Plaintiff, | **DEFENDANT CHARLES HOLLINS'S SENTENCING MEMORANDUM** |
| vs. | Date:    February 22, 2013 |
| CHARLES HOLLINS, | Time:    11:00 a.m. |
| Defendant. | Dept:    Hon. Susan Illston |

I.      **Introduction**

        On August 3, 2012, Charles Hollins pleaded guilty to Count One of the indictment -- Felon in Possession of a Firearm (18 U.S.C. § 922(g)(1)).  The plea was made pursuant to Rule 11(c)(1)(C).

        As reflected in the agreement, the parties agree to an Adjusted Offense Level of 21 and that the appropriate sentence is 70 months imprisonment.  Probation, in its Presentence Investigation Report ("PSR"), has stated that it disagrees with the Offense Level calculation reached by the parties because it believes there should be an adjustment based on the theory that Hollins possessed a firearm in connection with another felony offense (USSG § 2K2.1(6)(B)).  However, as demonstrated more fully below, there is insufficient evidence to support imposition of a 2K2.1(6)(B) adjustment. Notwithstanding that fact, the totality of circumstances in this case supports the 70 month sentence requested by the parties.

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Charles Hollins survived a childhood of brutality and neglect that no child should be expected to bear.[1]  He was subjected to severe beatings that left scars – both physical and emotional – that remain to this day.  Eventually removed from his mother's abusive household, Hollins was separated from his sister and placed in an ice-cold foster care system that showed him little caring and compassion.  He learned to fend for himself and, as could be predicted under the circumstances, fell in with sketchy characters and made self-destructive and damaging choices.  He has struggled.  Nonetheless, despite his nightmarish childhood, Hollins has proven to be an intelligent, resourceful and engaging young man.  Against all odds he learned to function in society, obtaining a high school education, learning job skills and obtaining employment, and striving to be a responsible person.  Although Hollins has had to learn how to understand and control anger that is a residual of his childhood, he has learned to express love and has built a relationship with his fiancé and his children that is based upon devotion and respect.  He hopes to one day provide his children the stable, warm and loving environment that was entirely absent from his upbringing.

Hollins has taken responsibility for his actions in this case.  He understands that his actions have placed him before the Court, have harmed his family, and that he alone is responsible for his actions.  He is also fully aware that he must make real and substantial changes in his life if he is to overcome the darkness of his childhood.  He is dedicated to making those changes.  The 70 month sentence requested by the parties recognizes the seriousness of the offense, Hollins's acceptance of responsibility for his actions, and the totality of circumstances.  The sentence comports with the longstanding and salutary directive that courts impose punishments that are sufficient but not greater than necessary to achieve the goals of sentencing.

---

[1] Hollins will, under separate cover, provide to the Court a personal statement that outlines his background and upbringing.

DEFENDANT'S SENTENCING MEMORANDUM                Macintosh HD Users hinckley Downloads Hollins - SN Memo-4.docx

## II. The Offense

Mr. Hollins is convicted of Count One of the Indictment filed on October 11, 2011 – Felon in Possession of a Firearm, in violation of Title 18 U.S.C. § § 922(g)(1). Hollins has admitted he has previously been convicted of a felony and that on September 4, 2011, he knowingly possessed a handgun which was located inside of his vehicle.

## III. The Plea Agreement

The government and Hollins executed a Rule 11(c)(1)(C) plea agreement in which both parties agreed that the reasonable and appropriate sentence in this case, pursuant to the Sentencing Guidelines and 18 U.S.C. § 3553(a), is 70 months imprisonment followed by three years of supervised release. Hollins requests that the Court impose the agreed upon sentence.

## IV. Guideline Calculation

a. **The Base Offense Level is 24 Pursuant to U.S.S.G. §§ 2k2.1(a)(2)**

b. **The Defendant Is Entitled To A 3 Level Reduction Under U.S.S.G. §§ 3E1.1(a) and 3E1.1(b).**

Hollins timely and clearly manifested his acceptance of responsibility and continues to demonstrate such acceptance of responsibility. Accordingly, pursuant to U.S.S.G. § 3E1.1(a) Hollins requests, and the Government does not oppose, a reduction of **2** levels.

Because the defendant is entitled to a 2 level decrease under U.S.S.G. § 3E1.1(a), and he timely notified the authorities of his intention to enter a plea of guilty, pursuant to U.S.S.G. § 3E1.1(b) he should receive an additional reduction of **1** level.

The Plea Agreement contemplated these reductions.

///

///

DEFENDANT'S SENTENCING MEMORANDUM

### c.     The Adjusted Offense Level Is 21.

Application of the **3** level U.S.S.G. § 3E1.1 reductions described above, to a Base Offense Level of **24**, results in an Adjusted Offense Level of **21**.

### d.     Probation's Position

Probation disagrees with the Guideline Calculation used by the parties.  It states in its PSR that a four level increase should be imposed pursuant to USSG § 2K2.1(b)(6)(B) – which applies to cases where a firearm is possessed in connection with another felony offense.  Hollins has objected to the PSR because the 2K2.1(b)(6)(B) increase is not applicable to this case.[2]  The PSR bases its position on inference and on the fact that Hollins is charged here with Possession with the Intent to Distribute. Neither the inference nor the pending drug charge is sufficient to support Probation's burden of proving that the requested increase is warranted.  See e.g., *United States v. Allen*, 434 F3d 1166, 1173 (9th Cir. 2006)(burden of proof falls on proponent of the requested offense level increase).  Notably, the drug trafficking charge relied on by Probation has not only neither been admitted nor proven, the government has agreed to dismiss it at sentencing per the plea agreement.  Accordingly, there is simply insufficient evidence that the firearm was possessed in connection with drug trafficking to support the increase.

## V.    Sentencing Guideline Calculations – Criminal History

The Probation Department has concluded that Hollins's criminal past corresponds with a Criminal History Category VI.   Hollins accepts Probation's calculations.

---

[2] Hollins has made two objections to the PSR.  He objects to applying the 2K2.1(b)(6)(B) increase, and he has objected to the statement that he previously used the names Demario Burris and Johnny Gomez as aliases.  Mr. Hollins has no recollection of previously using the aliases Demario Burris and Johnny Gomez but acknowledges, as noted in the probation officer's response, that he is known by these names to law enforcement and, therefore, withdraws the objection.

DEFENDANT'S SENTENCING MEMORANDUM                                    Macintosh HD Users hinckley Downloads Hollins - SN Memo-4.docx

**VI.      Sentencing Guideline Calculations – Guideline Range**

An Adjusted Offense Level of **21**, with a **Category VI** Criminal History results in a sentencing guideline range of 77 months to 96 months of imprisonment.

**VII.     Fines/Fees**

The Court has the ability to impose a fine which may not exceed $250,000.  Hollins will serve a lengthy prison term.  Hollins does not have the present ability to pay a fine and is unlikely to be able to pay a fine in the future.  Accordingly, the Court should waive any fine pursuant to U.S.S.G. § 5E1.2(e).

Probation has also recommended such a waiver.

**VIII.   Booker Factors**

In determining the appropriate sentence the courts are directed to fashion sentences that are "sufficient but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. §3553(a)(2):

(a)      retribution (to reflect seriousness of the offense, to promote respect for the law, and provided "just punishment");

(b)      deterrence;

(c)      incapacitation ("to protect the public from further crimes"); and

(d)      rehabilitation ("to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner").

(See *United States v. Carty*, 520 F.3d 984, 991 (9th Cir 2008)).

In determining the sentence minimally sufficient to comply with the aforementioned purposes of sentencing the court must consider several factors listed in Section 3553(a).  These factors are:

(1)      "the nature and circumstances of the offense and history and characteristics of the defendant;"

(2)      "the kinds of sentences available;"

(3)     the guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guideline range;

(4)     the need to avoid unwarranted sentencing disparity; and

(5)     the need to provide restitution where applicable.

(18 U.S.C. §3553(a)(1), a(3),(a)(5)-(7).)

Application of the § 3553(a) factors and adherence to the § 3553(a)(2) purposes of sentencing to the unique facts and circumstances of this case, as set forth in detail below, support the parties' position that a 70 month sentence be imposed.

**A.     Statement re Relevant 3553 Facts/Facts in Mitigation**

   • *Background & Childhood*

Charles Hollins, now 33, was born on February 23, 1979, and raised in the Bay Area.  His parents, Charles Hollins, Sr. and Hynetha Burris separated when Hollins was two years old.  It was soon after the separation of his parents that Hollins's childhood turned into an enduring nightmare that did not end until adulthood.

When Hollins's parents separated, he and his sister, Tacora Hollins, remained in the custody of their mother.  Soon, her mother's new boyfriend[3] began living in the home with them.  He was brutal. Hollins, his mother, and his sister were all subjected to vicious beatings at the hands of the boyfriend. Hollins's mother did not find a way to protect her children.  The beatings became increasingly sadistic. Hollins still has scars on his body from severe beatings and whippings that he received with extension cords.[4]   On top of the beatings, Hollins was forced to endure unspeakable humiliation, such as when Hollins was forced to drink the boyfriend's urine.

---

[3] The boyfriend and Hollins's mother have long separated.

[4] Please see Hollins's personal statement, presented under separate cover.

DEFENDANT'S SENTENCING MEMORANDUM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Eventually Hollins's sister Tacora told the mother of a friend about the abuse and the beatings. Child Protective Services (CPS) investigated and removed the children from Hollins's mother's custody. Hollins and his sister were then placed into a foster care system that proved to be, at best, inept.  He and his sister were separated against their will and placed into different homes.  Hollins did not see his sister again for over two years.

Life in foster care was one of misery for Hollins.  He was placed in a group home where the foster parents displayed no affection to the children, and forced them to spend all of their time lying in bed in their bedroom.  They were kept inside the home by doors that not only locked people out, but locked the kids in.  Hollins felt isolated, hopeless and despondent.  Eventually, Hollins received a reprieve when he was moved into a different foster home that was located closer to where his mother resided. [5]

Hollins was then placed with his father, who was simply unable to care for his child.  Hollins lacked for basic necessities and started looking for acceptance and role models in troublesome places. At the age of 12, Hollins became friends with another boy whose mother was a drug addict, and whose grandmother was a drug dealer.  Hollins admired his friend and his family.  Despite the issues with drugs and addiction, the family clearly loved one another.  Family love is what Hollins was missing and he was attracted to it.  Hollins moved in with his friend's family.  Soon after, Hollins soon joined his young friend selling drugs for the grandmother.  Eventually Hollins was living almost entirely on his own, sleeping in cars and hiding away, and selling and using drugs.  He became addicted to substances, and started having run-ins with the law.

---

[5] At the time San Francisco had what was recognized as one of the worst foster care systems in the state of California.  By the early 1990's the State of California's  Department of Social Services formally censured San Francisco's Department of Social Services for failing to comply with California's child welfare regulations. See Munroe, Identifying & Maximizing Resources Within the Family & Children's Division of the San Francisco Department of Social Services, (1996).

DEFENDANT'S SENTENCING MEMORANDUM                    Macintosh HD:Users:hinckley:Downloads:Hollins - SN Memo-4.docx

Although his childhood was bitter, Hollins has been able to forge a relationship with both his mother and father, and their respective partners. His father's wife, Sally Crocket, became a mother figure to Hollins and provided the affection for which he was starved. Her death in 2011 devastated Hollins, and he relapsed into his addiction and began making the poor choices that resulted in his arrest in this case. Hollins's mother's husband, Malachi Burris, is a Senior Deputy Sheriff in San Francisco and has been a friend to Hollins.

- *Education*

In 1998, Hollins completed high school through the De Witt Nelson facility in Stockton, California. Prior to that, Hollins attended elementary and middle school in San Francisco.

- *Employment*

Working, and trying to maintain employment has been important to Hollins. He has always found value in work and has worked steadily when possible. Prior to his arrest in this case Hollins worked for approximately six months in maintenance and painting with CVC in Hillsborough, California. Before that, he worked in janitorial services for a year with Duckett Investments in American Canyon. He has worked as a warehouseman and driver for Ashley Furniture. He has worked as a stocker and forklift driver for Wal-Mart. He has worked as a host for IHOP restaurant. And he has worked as a stocker for K-Mart. Hollins is hoping to use his time while incarcerated learning useful skills that he will be able to use on the job market when he is released.

- *Family*

Hollins has been in a relationship since 2006 with his fiancé Lyniece Eddins, with whom he has a four year old daughter named Camari. He has 5 other children from prior relationships. His oldest child is 12 year old Aurian Hollins, who lives with his mother Cantrell Murphy in San Francisco. 11 year old Masiah Hollins lives in Fremont with his mother Tanya Landry. From 2003 through 2006

Hollins was married to Arra Fiona Thomas.  Together they have three children – Charles Hollins III (9), Sir Charles Hollins (4), and Charli Hollins.  Charles III and Sir Charles live with Hollins's father's parents in San Francisco.  Charli lives with Arra and her parents in Fairfield, California.

Hollins has tried to maintain a close and loving relationship with his children.  Until he was arrested in this case he made it a point whenever possible to take his children to school, get to know their teachers and to be a presence in their lives.  Realizing the pain his early family life has brought him, Hollins has strived to be a positive influence in the lives of his children and his family.  His dedication to his family is reflected in letters provided by family members on his behalf.[6]  A few pertinent statements from the letters are set forth for the Court's benefit here:

> o   *"Charles and I share a 4 year old child together and he is a terrific father to our son; he's more like a role model to him, taking him to school, being involved with school activities, the teachers love him as well."*  **Lyniece Eddins, fiancé and, with Hollins, parent of Camari.**

> o   *"It's a job being a single parent; with that being said, Charles Hollins was very supportive with helping to care and assist me with our daughter."* **Arra Fiona Thomas, ex-wife and mother of children with Hollins**

> o   *"He is such a wonderful father who's involved in everything concerning his family."* **Ena V. Thompson, mother of Lyniece Eddins**

> o   *"In 1995 I was badly injured in a car accident and I have challenges which Charles, my oldest son, has helped me.  Also when my [younger] son was shot at a Sweet 16 Birthday party, along with 4 other youth, my son [Charles] was there*

---

[6] The letters will be provided to the Court under separate cover.

Macintosh HD:Users:hinckley:Downloads:Hollins - SN Memo-4.docx

*to help me make it through – as well as advising my [younger] son he can*

*overcome the hurt of the street violence…"* **Hynetha Burris, Hollins's Mother**

• ***Drug/Alcohol Use***

As noted above, Hollins's exposure to narcotics came when he was very young.  By the time he was 12 years old Hollins was living with a family where the adults openly used and sold drugs.  Hollins soon began to use drugs, including marijuana laced with crack cocaine.  As a result, Hollins has dealt with addiction issues since childhood, and has had serious issues controlling his use of drugs and alcohol.

## IX.    Remorse & Sentence

This case has left Hollins feeling personally ashamed and remorseful.  He had worked hard to be a presence in the life of his children and his family.  His actions in this case have taken him away from his children, his fiancé, his sister and his parents.  Hollins is fully aware of the pain he has caused to those who love him.  And he is sorry for the damage done.

The 70 month custodial sentence to which the parties agreed is the appropriate sentence.  First, it is a serious and painful sanction for Hollins's conduct in this case.  The sentence also recognizes Hollins's genuine remorse and acceptance of responsibility for his actions.  Finally, the sentence also recognizes that Hollins is a young man struggling with demons and horror that were not entirely of his making.  His childhood was appalling.  Appalling not only because of the beatings, which of course continue to haunt, but also because of the helplessness Hollins was left to feel when the system that was designed to rescue him separated him from his sister and left him in cold and unfeeling hands.  Appalling not only because Hollins was ultimately left fending for himself, but because when he did connect to a family that could help him, the adults in that family exposed him to a world of drug

DEFENDANT'S SENTENCING MEMORANDUM

Macintosh HD:Users:hinckley:Downloads:Hollins - SN Memo-4.docx

addiction and drug trafficking.  Hollins had no possibility of coming out of that childhood without being badly damaged.[7]

The PSR specifically presents to the Court facts of Hollins's childhood for consideration in fashioning a sentence.   PSR @ page 21, para. 19.  Hollins requests the Court consider them and impose the requested sentence.

## X.      Conclusion

Hollins urges the Court to accept the agreed upon sentence reached by the parties and impose a sentence of 70 months in Federal Prison with a term of Supervised Release of three years.  Further, Hollins urges the Court to waive the fine as he does not have the ability to pay.

This sentence reflects an accurate application of the aforementioned Sentencing Guidelines and is consistent Title18 U.S.C. § 3553(a) and the plea agreement of the parties.

Dated:   2/14/13

Respectfully submitted,

/s/Michael L. Hinckley

By: _____

MICHAEL L. HINCKLEY

---

[7] The horrific childhood also continues to haunt Hollins's sister Tacora.  She too has struggled with addiction to substances to which she was exposed as a young child.

11

DEFENDANT'S SENTENCING MEMORANDUM

Macintosh HD Users hinckley Downloads Hollins - SN Memo-4.docx